UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANDEEP SINGH,
A-240-843-262,

          Petitioner,

    v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et. al.,

          Respondents.

No.  1:26-CV-00053-WBS-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents filed an answer, ECF No. 12, and Petitioner filed a reply, ECF No. 13.

**I. BACKGROUND**

Petitioner contends he has an asylum case which has been pending since July 2022, and he has been in immigration custody since July 8, 2025. See ECF No 1, pg. 5. Petitioner asserts that he has not been ordered removed. See ECF No. 13, pg. 4 (citing ECF 12-1, pg. 3). According to Petitioner, "his life will be in serious danger upon return to his country. Petitioner is a refugee with real fear of being persecuted, tortured, or killed if returned." ECF No. 1, pg. 5. Petitioner asserts that he has no criminal convictions, is not a danger to society, is not a flight risk,

1

and has cooperated with Immigrations and Customs Enforcement (ICE) throughout his conditional release. See id. at 5-6. Petitioner contends that he was arrested and taken into immigration detention during a regular check-in, a requirement of his release. See id. According to Petitioner, the conditions of detention are "poor," medical care is "delayed," food is "contaminated with insects and foreign objects," and officers are "disrespectful." Id. at 6. Petitioner asserts that his detention without a bond hearing violates due process because Petitioner's detention has exceeded six months. See id. at 8-13.

Petitioner concedes that on May 2, 2025, Petitioner was "in a traffic accident" while driving a semitruck with his Class A driver's license. See ECF No. 13, pg. 1. According to Petitioner, he was "initially charged with speeding and the State alleges that another driver died in the wreck." Id. Petitioner asserts that he appeared in Illinois State Court on May 5, 2025, the state released Petitioner on his own recognizance., and Petitioner appeared for his arraignment via Zoom on June 12, 2025. See id. at 2 (citing ECF No. 12-2). Petitioner represents that he "wishes to fight the charges against him in Illinois," but Petitioner is unable to because of Petitioner's detention. See id.

Petitioner contends that after the accident, Petitioner "reported to ICE in person and was given an ankle monitor. He was not taken into custody" and Petitioner was released, with the added condition of an ankle bracelet. Id. However, Petitioner asserts that over two months after he was released from Illinois custody, ICE arrested and detained Petitioner. See id.

Petitioner provides the following background on the status of those charges:

> he was charged with driving too fast for conditions (the charge for which the Illinois State Police arrested him), he was later charged in a superseding indictment with violating Illinois Compiled Statutes (ILCS) section 6/18b-103, which makes it illegal to fail to follow certain provisions of the Code of Federal Regulations relating to trucking. Id. Later still, after ICE detained him in July, the State on October 10, 2025, obtained a superseding indictment alleging violations of three Illinois penal statutes, notwithstanding that the State Police had alleged only that Mr. Singh may have been "driving too fast for conditions."

Id. at 3.

///

///

2

Petitioner alleges that the facts contained within the superseding indictment issued following the accident do not support Petitioner's new charges. See id. Specifically, two of the charges require certain road conditions, "'such as a railroad crossing, bridge approach, or hill, (sufficient)to cause the vehicle to become airborne,'" but the accident occurred on an interstate highway "that is not likely to have any of these features." Id. (quoting ILCS section 720-5/9-3(a)).

Respondents argue that because Petitioner "was arrested and charged with a criminal violation *resulting in bodily harm/death* . . . and other ATD violations, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") on July 8, 2025, at the Bakersfield ICE ISAP Office." ECF No. 12, pg. 1 (emphasis in original) (citing ECF No. 12-1, pgs. 2-3). Respondents contend that Petitioner's detention is required under 8 U.S.C. § 1226(c)(1)(E)(ii) due to Petitioner's charges. See id. at 2. According to Respondents, the Supreme Court in Jennings held that such detention "beyond six months is constitutional and is mandatory until an alien's immigration proceedings have concluded." Id. (citing Jennings v. Rodriguez 583 U.S. 281, 303 (2018)). Respondents request that the Court deny the petition but should the Court order Petitioner's release, "Respondents request that Respondents be permitted to transfer Petitioner into custody of the State of Illinois which is seeking to prosecute Petitioner criminally." Id.

Petitioner argues that Jennings "does not address whether prolonged detention under section 1226(c) is constitutional." ECF No. 13, pg. 4. Petitioner contends that "by detaining Mr. Singh based solely on an arrest or charge, respondents have created a Catch-22 that impairs the rights of the State of Illinois to prosecute Mr. Singh and of Mr. Singh to establish his innocence of the State crimes for which he has been charged." Id. at 4-5. Petitioner asserts that the case in Winnebago County, Illinois could have been adjudicated in the time Petitioner has been detained and his detention is the only barrier to those prosecution proceedings. See id. at 5. Petitioner's public defender assigned for his criminal charge informed Petitioner that Winnebago County issued a warrant for Petitioner's arrest and therefore, if he were released, "it is likely that the State will execute that warrant." Id. Petitioner states that even if such warrant is not executed, he intends to travel to Illinois for his required court hearings.

3

Next, Petitioner contends that the holding in Jennings does not apply to Petitioner because there, the Court concluded "that [although] section 1226(c) 'does not on its face limit the length of the detention it authorizes,' [the Court] noted that the statute provides for detention to continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (quoting Jennings, 583 U.S. at 303. Further, Petitioner contends that the Supreme Court in Demore "held detention 'during removal proceedings' to be 'a constitutionally permissible part of that process,' 538 U.S. at 531, but carefully noted that 'the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the alien chooses to appeal.'" Id. at 6. (quoting Demore v. Kim, 538 U.S. 510, 530 (2010).

Petitioner argues that because nothing in the documents regarding Petitioner's detention indicates that Petitioner is in the removal process, "on its face, section 1226(c) does not authorize [Petitioner's] continued detention" and "because no removal proceedings have begun, there is no 'definite termination point.'" Id. Further, Petitioner asserts that the Supreme Court in Jennings and Demore "did not decide the constitutional question whether indefinite detention without bond comports with the Fifth Amendment." Id. Petitioner cites Nielsen v. Preap, 586 U.S. 392, 420 (2019), in support of his claim that as-applied constitutional challenges to 1226(c) are not precluded by either Jennings or Demore.

Additionally, Petitioner argues that Fifth Amendment due process "continues to limit government action without regard to the language of statutes." Id. at 7. Petitioner cites an Eastern District order wherein Magistrate Judge Boone

> observed that "the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens for whom detention is mandatory," but notes that the Court "has recognized that 'district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)' based on due process and noted that '[a]ccording to one such court order, the "prolonged mandatory detention pending removal hearings, without a bond hearing will – at some point – violate the right to due process.'"
>
> Id. (quoting Abdul-Samed v. Warden of Golden State Annex Detention Facility, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *5 (E.D. Cal. July 25, 2025) (citing Martinez v. Clark, 34 F.4th 1219, 1223 (9th Cir. 2022)).

4

Finally, Petitioner asserts that

> at least one court has ruled that mandatory detention under the Laken Riley Act of a habeas petitioner who was merely arrested for a crime violated that petitioner's due process rights. See Doe v. Moniz, 800 F.Supp.3d 203, 216 (D. Mass. Sept. 5, 2025). The Moniz court noted that the Supreme Court has only upheld mandatory detention without a bond hearing for nonresidents already present in the United States in cases where those persons sustained convictions that "were obtained following the full procedural protections our criminal justice system offers." Demore, 538 U.S. at 513; also see Zadvydas, 533 U.S. at 684-86.

Id. at 7-8.

Petitioner contends that Petitioner's detention prevents Petitioner from the process of adjudicating his charges and further, Petitioner has not been provided any process as to his detention, such as a bond hearing. See id. at 8. Petitioner contends that Respondents

> do not suggest that [Petitioner] poses a risk of flight or a danger. Nor could they: he was released by immigration in 2022, by Illinois in 2025, and continued to be released by immigration until July 2025, and the charges for which they claim to have detained him arose out of an accident that appears to have taken a tragic turn, not out of any conduct evincing a violent disposition or because of any act of moral turpitude. Prior to his detention last July, he complied with all conditions of his release, appeared in Illinois State Court for arraignment, and reported to ICE when requested.

Id. at 8.

Thus, Petitioner contends he is entitled to relief, his petition should be granted, and Petitioner requests immediate release upon the same conditions of his release in July 2025, which included an ankle monitor, and that Respondents be enjoined from re-arresting or re-detaining him absent specific process.

## II. DISCUSSION

The undersigned finds that Petitioner is subject to mandatory detention pursuant to § 1226(c) but Petitioner has established his detention appears indefinite and the undersigned will therefore recommend the petition be granted and Petitioner be released immediately.

### A.     Detention Pursuant to § 1226(c)

The most important consideration to determine whether immigration detention is mandatory or discretionary, and the process afforded to the detainee to challenge such detention is

5

what statute, and section of said statute, the individual falls under. See Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs the apprehension and detention of noncitizens whose removal proceedings are pending. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Section 1226(c)(1)(E) of the Immigration and Nationality Act mandates the detention of inadmissible noncitizens[1] "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E).

In Jennings, the Supreme Court found that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" 583 U.S. 281, 303-04, (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmation prohibition on releasing detained aliens under any other conditions."). Accordingly, the Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id.

Here, Petitioner was issued a Notice to Appear on June 3, 2022, charged "pursuant to section 212 (a)(6)(A)(i)," and released on an Order of Recognizance. ECF No. 12-1, pg. 2. On May 2, 2025, Petitioner was arrested and charged with "driving too fast for conditions, or failure to reduce speed to avoid an accident," ECF No. 12-2, pg. 1, and "False Reported Duty Status . . . knowingly create[ing] and us[ing] two electronic log books knowingly violating the 11 and 14

---

[1] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien," in keeping with recent preferred nomenclature. Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (collecting cases).

hours of service rules . . .," id. at 4, following a fatal vehicle collision.[2] Thus, the undersigned finds that Petitioner's detention is pursuant to § 1226(c)(1)(E).

      **B.**     **Indefinite Detention**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). With regard to immigration detention, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690. In Demore, the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c), in part due to the "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Demore v. Kim, 538 U.S. 510 (2003). The Court distinguished the facts at issue with Zadvydas, concluding that the issue there was "indefinite and potentially permanent" detention. Id. at 528. The Court reasoned that when a noncitizen is detained under § 1226(c), "not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529. The definite termination point is "the conclusion of removal proceedings." Jennings v. Rodriguez, 583 U.S. 281, 304 (2018) (internal citations omitted).

In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c) are not foreclosed. Preap, 586 U.S. at 420. An as-applied challenge requires a plaintiff to show that "the application of the statute to a specific factual circumstance" is unconstitutional. Hoye v. City of Oakland, 653 F.3d 835, 857 (9th Cir. 2011). Thus, the undersigned finds that detention under § 1226(c) may raise "a serious constitutional problem," if, as applied, such detention results in the noncitizen's indefinite

---

[2] The undersigned notes that Respondent claim that Petitioner had additional "ATD violations," ECF No. 12, pg. 1 and No. 12-1, pgs. 2-3, without providing any information on those violations, aside from Petitioner's May 2, 2025, arrest. Thus, the undersigned can only consider his May 2, 2025, arrest as there is no further information on any additional violations.

detention.

In Uulu v. Warden, No. 1:25-CV-01812-WBS-CKD, 2026 WL 412204, at *7 (E.D. Cal. Feb. 13, 2026), the District Judge assigned to this case considered three factors "to determine if a petitioner's detention appears to be indefinite" in denying a claim brought by a noncitizen detained for almost three months pursuant to § 1225(b). The District Judge then applied these factors when analyzing a noncitizen's detention pursuant to § 1226(c) to conclude that there, such detention comported with due process. See Ramiro Trujillo Hernandez, V. Warden, Et Al., No. 1:25-cv-1711-WBS-SCR, 2026 WL 905100, at *2 (E.D. Cal. Apr. 2, 2026). These factors are:

> (1) the petitioner's immigration proceedings have been infected with "bad faith or undue delay by the agency," (2) the petitioner's detention is "directly associated with a judicial review process that has a definite and evidently impending termination point," and is thus "akin to detention during the administrative review process [that] was upheld [by the Supreme Court] in [Demore] (3) there is "evidence that [the petitioner] is unremovable because the destination country will not accept him or his removal is barred by our own laws . . ..

Uulu, 2026 WL 412204, at *7 (internal quotations and citations omitted).

Considering these factors here, the undersigned finds Petitioner's detention appears to be indefinite based on the record before the Court. Petitioner has been in detention for over nine months, or 281 days, ECF No. 1, pg. 5, and Petitioner's initial Notice to Appear was issued June 2, 2022, ECF No. 12-1, pg. 2.  However, Petitioner has yet to be issued an order of removal. See ECF No. 13, pg. 6. The Court checked the Executive Office for Immigration Review Automated Case Information,[3] which shows Petitioner's case is pending and he is scheduled for a Master hearing on May 12, 2026. Petitioner's notice to appear, issued July 8, 2025, indicated that Petitioner's master hearing was set for May 4, 2026. See ECF No. 12-1, pg. 3. There is no explanation for why Petitioner's hearing was delayed.

Given this timeline, the undersigned therefore finds that Petitioner's immigration proceedings have been infected with undue delay by the agency. Further, the absence of an order of removal, or any indication of the next steps in Petitioner's removal process, the record is

---

[3] The Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).

unclear if Petitioner's detention is "directly associated with a judicial review process that has a definite and evidently impending termination point." Put another way, there is no evidence of a definite or impending termination point.

Finally, it has not yet been established if Petitioner is unremovable. Petitioner contends he applied in July 2022 for asylum, which remains pending, ECF No. 13, pg. 1, and Petitioner claims he has a legitimate case for such status, ECF No. 1, pg. 6. Respondents do not address the merits of Petitioner's asylum application, which is not necessary or appropriate for the Court to consider. However, Respondents additionally do not provide any information about the potential timeline for the asylum process, and there is no information on the record as to whether Petitioner would be accepted by India or if his removal to India would violate U.S. laws. Thus, while there is no evidence in the record to determine if Petitioner is removable or unremovable. Accordingly, the undersigned finds this factor does not weigh for or against finding Petitioner's detention is indefinite.

The undersigned finds this case distinguishable from Hernandez, where the District Judge concluded "petitioner's removal proceedings are appropriately advancing in due course." Ramiro Trujillo Hernandez, Petr., V. Warden, et al., Respondents., No. 1:25-CV-1711-WBS-SCR, 2026 WL 905100, at *2 (E.D. Cal. Apr. 2, 2026). There, the petitioner "had seven hearings in his immigration proceedings . . . Petitioner has further requested and received five continuances of those hearings, resulting in approximately nineteen weeks of delay of his own making." Id. at *2, n. 1. Here, it does not appear Petitioner has been afforded any hearings nor has Petitioner requested any continuances contributing to the delay.

Next, the facts here are distinguishable from Keo, where the Magistrate Judge concluded that petitioner, detained pursuant to § 1226(c), was not entitled to habeas relief. See Keo v. Warden of the Mesa Verde Ice Processing Ctr., No. 1:24-CV-00919-HBK (HC), 2025 WL 1029392, at *7 (E.D. Cal. Apr. 7, 2025), appeal dismissed sub nom. Keo v. Warden, No. 25-3546, 2025 WL 2528945 (9th Cir. June 27, 2025). The Keo Court found that "the threshold question in considering Petitioner's claims of unreasonably prolonged detention under § 1226(c) without a bond hearing is whether Petitioner's continued detention serves the purported immigration

9

purpose and has a definite termination point." Id. The Court concluded that petitioner's detention was for an immigration purpose, based on the facts in the record, including that:

> Petitioner is awaiting a decision on his consolidated appeals regarding an order that *requires* his removal . . . Petitioner does not point to any "unreasonableness" in the length of removal proceedings that is directly attributable to the government; rather, the delay appears to be a direct result of Petitioner taking full advantage of his right to contest his removal"

> Id. (emphasis in original).

In Keo, the petitioner was issued a final order of removal and was in the process of seeking relief from the removal order. Id. at 2. Petitioner there was actively engaged in removal proceedings, demonstrating his detention was for an immigration purpose and there was a definite termination point when that process concluded.

Here, throughout the nine months of Petitioner's detention, he has not been ordered removed and there is no information about when the merits of Petitioner's removal may be considered. Thus, Respondents have not established that Petitioner is detained for an immigration purpose, because Respondents have not taken the necessary steps in the process, aside from issuing a Notice to Appear over one year ago. Indeed, Petitioner's master calendar hearing, which is generally when Petitioner would receive information about when the merits of his removal will be addressed, was scheduled almost ten months from the issuing of Petitioner's notice to appear and that hearing has already been delayed. Even if the Court were to find Petitioner's detention is for an immigration purpose because he is scheduled for a master calendar hearing, there is no definite termination point because that hearing can, apparently, be delayed. Additionally, in Keo, the petitioner's decision to challenge his removal order extended his detention whereas here, there is no indication that Petitioner has delayed his removal proceedings.

Further, Petitioner here is in a unique position because he is subject to § 1226(c) based off a charged offense, rather than conviction. In Hernandez, Keo, Demore, and Jennings, the petitioners were subject to § 1226(c) due to convictions which also made them deportable under § 1226(c)(1)(B) or (C). Petitioner here is deemed inadmissible and charged with a crime that resulted in death but whether Petitioner is deportable has not been determined. See §

1226(c)(1)(E). Indeed, Petitioner's immigration detention prevents him from adjudicating his criminal charge. Given Petitioner has been charged with a crime which subjects him to § 1226(c), he has not been deemed deportable, and he has not been ordered removed, there is no definite conclusion to Petitioner's detention.

Taken together, the undersigned finds that Petitioner has established that his detention appears to be indefinite and Respondents have not provided any evidence otherwise or directed the Court to any statutory authority which will ensure there is a definite conclusion of Petitioner's detention.

Thus, the undersigned will recommend that Petitioner be released and Respondents may impose appropriate conditions of supervision. Respondents request that, if the Court determines release is appropriate, that "Respondents be permitted to transfer Petitioner into custody of the State of Illinois which is seeking to prosecute Petitioner criminally." The relief recommended here is narrow in scope in that it only addresses Petitioner's immigration detention. However, nothing about this recommendation would preclude appropriate action following Petitioner's release, including coordination with officials in Illinois to effectuate any outstanding warrants for arrest. Indeed, Petitioner acknowledged "it is likely that [Illinois] will execute that warrant."

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.  It is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be GRANTED as to Petitioner's indefinite detention;

2.  It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner with appropriate conditions of supervision.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at

issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 21, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

12